**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| STEVE RAPTAKIS, | |
| Plaintiff, | |
| v. | Civil Action No. 1:09-cv-1143 TSE/IDD |
| DEUTSCHE LUFTHANSA AG, INC., et al., | |
| Defendants. | |

**DEFENDANT METROPOLITAN WASHINGTON AIRPORTS AUTHORITY'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE**

Defendant Metropolitan Washington Airports Authority ("Airports Authority"), by counsel, hereby submits this Reply to Plaintiff Steve Raptakis's ("Raptakis") Opposition to the Airports Authority's Motion in Limine ("Opposition") regarding Raptakis's expert witness, David A. Thompson, Ph.D. ("Thompson"). In support thereof, the Airports Authority states as follows:

**A.    Regardless of Thompson's alleged expertise regarding "conveyor systems," such alleged expertise is not relevant to the facts of this case, and will not aid the fact finder in determining how or why this accident occurred, whether it was preventable, or who is ultimately responsible for it.**

Raptakis's Opposition states that, since Thompson is an engineer, his testimony will aid the jury to "make determinations regarding this case." See Opposition, ¶4. The engineering testimony Raptakis claims will aid the jury in making determinations regarding the case involves "conveyor system[s]" and OSHA regulations. Id. at ¶¶5-10. Raptakis's Opposition persists in the fiction that the Airports Authority is in the business of the "conveyor industry," and that, as such, the Airports Authority should be liable to Raptakis if the baggage carousel where Raptakis was allegedly injured was not in conformance with "conveyor industry" standards. Id. at ¶5.

Regardless of Thompson's alleged expertise regarding "conveyor systems," such alleged

expertise is not relevant to the facts of this case, and will not aid the fact finder in determining how or why this accident occurred, whether it was preventable, or who is ultimately responsible for it. For one, the Airports Authority is not in the "conveyor industry" any more than it is in the "fast food industry," the "shoe shine industry," the "fuel truck industry," or any other "industry" that might have a presence at Dulles Airport. But more to the point, this case is about whether the baggage carousels in the International Arrivals Building ("IAB") at Dulles Airport, where hundreds of thousands of passengers claim their baggage every year without incident, were improperly designed, dangerous, and/or defective and were the proximate cause of Raptakis's injury.

As noted in the Airports Authority's Motion in Limine, Thompson has readily admitted in deposition that he has never consulted for an airport or an entity that operates an airport (See Deposition Transcript of David Thompson, attached as Exhibit B to Motion in Limine, p. 15:18-20); he has never consulted for, or testified for or against, any company that designed, manufactured and/or installed baggage claims systems in airports (Id. at pp. 16:12-22 through 17:1-10); he has never taught any courses on baggage claim system installation or design, nor has he ever installed or designed a baggage claim system (Id. at p. 17:11-18); he has never consulted with any companies that maintained baggage claim systems, nor taken any course on baggage claim system design, installation or maintenance (Id. at pp. 17:19-22 through 18:1-6); he has never conducted any formal research on baggage claim system design, installation or maintenance, nor has he published anything on baggage claim system design, installation or maintenance (Id. at p. 18:4-20; 22:15-22 through 23:1-5); he has never attended any lectures or seminars on baggage claim system design, installation or maintenance (Id. at p. 23:6-9); nor has he ever been involved in any cases (prior to the present case) involving injuries at baggage carousels in airports (Id. at p. 22:12-14).

Furthermore, Thompson admitted in deposition that he never inspected the baggage carousels

in the IAB, despite having the opportunity to do so (Id. at pp. 60:21-22 through 62:1-17); that he does not know at which one of the six baggage carousels in the IAB Raptakis was allegedly injured (Id. at p. 63:4-6); and that he does not even know how the accident happened (Id. at pp. 29:15-17; 36:19-22; 41:4-11, 16-22; 42:1-11). Thompson admitted in deposition that the kind of baggage carousels used in the IAB are used in other airports (Id. at p. 106:1-15) and that the baggage carousels in the IAB did, in fact, have emergency stop buttons and that he does not know how many emergency stop buttons were actually present on the baggage carousels (Id. at pp. 49:12-20; 57:21-22 through 59:1-3; 79:9-22 through 80:1-10). In deposition, Thompson could not cite to any other airport, anywhere in the world, that had the emergency stop measures, warnings, or "zero pressure" or "minimum pressure" accumulation conveyors at baggage carousels, that he claims are industry standard and required by OSHA. See Id. at pp. 57:2-20; 76:22 through 77:1-9; 86:19-22 through 88:1-19; 98:18-22 through 99:1-20; 106:22 through 107:1-21; 110:12-22 through 111:1-5.

    The Airports Authority understands that Raptakis would like to be able to claim at trial that the baggage carousel at which he was allegedly injured was not designed or built in conformance with industry standards. But in order to make such a claim, Raptakis must be able to present reliable evidence, through Thompson, that the baggage carousels in the IAB were not in conformance with the standard in use in the *airport operations industry*, which, as shown above, he simply cannot do. Raptakis cannot be allowed to present "evidence" to the jury that the Airports Authority was negligent because it did not use the type of conveyors at its baggage carousels that are in use in soft drink bottling plants when no other airport uses them either. See Id. at pp. 87:19 through 89:2. And Raptakis cannot be allowed to claim that the Airports Authority violated an industry standard with regard to the placement of emergency stop switches when he can reference no other airport that has complied with the allegedly controlling OSHA regulation. See Id. at pp. 57:2-20; 76:22 through 77:1-

9; 98:18-22 through 99:1-20; 106:22 through 107:1-21; 110:12-22 through 111:1-5.

Moreover, the Opposition's claim that OSHA applies to the entire baggage claim system, including to the baggage carousels, is without support. See Opposition, ¶6. Thompson, in deposition, made statements indicating that he was no "expert" on OSHA, and that he was not even certain if it were applicable to the present case. Id. at pp. 77:10-19; 78:9-19. Raptakis has no "right," as he claims in his Opposition, to present testimony by Thompson that OSHA applies to the baggage carousels and to Raptakis in particular, when Thompson clearly stated that he did not know if the regulations applied or not. See Opposition, ¶10. Even if Thompson were "certain" that OSHA applied to Raptakis in this case, such testimony would still have to be excluded as being completely unreliable, given OSHA's regulation of the relationship between employer and employee and Raptakis's status as a member of the traveling public.

    **B.**    **With regard to how Raptakis's injury allegedly occurred, the Opposition's argument that Thompson is more qualified to "speculate" as to the cause of Raptakis's injury than the jury is without merit.**

Raptakis claims in his Opposition that Thompson is more qualified than the jury to "speculate" on how and why the accident happened because of "the highest levels of education and experience" allegedly possessed by Thompson, and that therefore his testimony on this issue should be admitted at trial. See Opposition, ¶¶11-12. But an expert witness may not base his opinions on speculative assumptions not supported by the record, as such testimony may mislead the jury. See Tyger Const. Co., Inc. v. Pensacola Const. Co., 29 F.2d 137, 142 -144 (4th Cir. 1994). Raptakis may testify as to how and why he believes he was injured; Thompson's speculation on how or why the accident occurred is inadmissible and should be excluded.

To bolster his argument, Raptakis makes the unsupported claim that the Airports Authority has "withheld" evidence and destroyed a video-tape of the accident. See Opposition, ¶11. Raptakis

made these baseless arguments in a Motion to Compel and for Sanctions filed with this Court on Friday, May 21, 2010.  See Raptakis's Motion to Compel and for Sanctions, Document No. 100. But, as will be shown in the Airports Authority's Opposition to said Motion, to be filed by the deadline of Wednesday, May 26, 2010, Raptakis has no support for the claims made in this Motion, and his Motion to Compel should be denied.

Regardless of the impropriety of Raptakis's Motion to Compel and for Sanctions, whether or not the Airports Authority has "withheld evidence" as Raptakis claims in his Opposition, has absolutely no bearing on Thompson's entitlement to speculate as to the facts of the case.  See Opposition, ¶11.  Raptakis has already testified, in deposition, as to how and why he believes this accident occurred.  Presumably, he will do so again before the jury.  Thompson is not entitled to speculate on how or why the accident occurred when Raptakis will already testify to his version of the facts.  In other words, this case does not present a situation wherein Raptakis was rendered unconscious during the accident or is otherwise unable to testify as to what happened.  Therefore, he is not entitled to present the speculation of his "expert" to the jury to explain how the accident occurred, the presence or absence of any given piece of evidence notwithstanding.

WHEREFORE, given the above good and valid reasons, and those set forth in Defendant Airports Authority's Motion in Limine, the Airports Authority respectfully requests that this Court enter an Order limiting Plaintiff's expert, David A. Thompson, Ph.D., from offering any opinions at the trial of this matter that are based on OSHA, ASME or industry standards, or that are based on his speculation as to the facts of this case.

Respectfully Submitted,

METROPOLITAN WASHINGTON AIRPORTS AUTHORITY

By Counsel:

FRIEDLANDER MISLER, PLLC

/s/
_____
Joseph W. Santini, Esq., VSB 47377
Elizabeth B. Fisher, Esq., VSB 72120
Morris Kletzkin, Esq.
1101 17th Street, NW, Suite 700
Washington, DC 20036
202-872-0800
202-857-8343 (fax)
jsantini@dclawfirm.com
lfisher@dclawfirm.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 24th day of May 2010, I sent the above Reply to Plaintiff's Opposition to the Airports Authority's Motion in Limine via the Court's electronic case filing system and first-class mail to:

    David Ludwig, Esq.
    DUNLAP, GRUBB & WEAVER, PLLC
    199 Liberty St., SW
    Leesburg, VA 20175
    *Counsel for Plaintiff Steve Raptakis*

And by first-class mail and facsimile to:

    Kay Leslie Ackman, Esq.
    900 Cadington Ave.
    Silver Spring, MD 20901
    *Counsel for Plaintiff Steve Raptakis*

/s/ Joseph W. Santini
_____
Joseph W. Santini